# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTONIO RATCLIFF,

        Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 326588
Wayne Circuit Court
LC No. 14-002579-FH

Before: WILDER, P.J., and MURPHY and O'CONNELL, JJ.

PER CURIAM.

The prosecutor charged defendant with bestiality with a dog, MCL 750.158, and animal cruelty, MCL 750.50(2) and (4). After a bench trial, the trial court convicted defendant of both counts. The court sentenced defendant to three years' probation. Defendant appeals as of right, and we affirm.

Initially, defendant challenges the sufficiency of the evidence supporting his convictions. In *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008), this Court addressed a sufficiency argument in the context of a bench trial, observing:

> We review claims of insufficient evidence de novo. When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [Citations omitted.]

"[W]hether alleged conduct falls within the scope of criminal law is a question of law subject to review de novo." *People v Cassadime*, 258 Mich App 395, 398; 671 NW2d 559 (2003). In *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008), this Court summarized the principles governing statutory interpretation:

-1-

The primary objective in construing a statute is to ascertain and give effect to the Legislature's intent. We begin this task by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. Unless they are otherwise defined in the statute or are terms of art or technical words, we assign the words of a statute their plain and ordinary meaning. If a statute leaves words undefined, we may consult a dictionary to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings. . . . . Although we must, as far as possible, give effect to every word, phrase, and clause in the statute, we may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations, quotation marks, and alteration bracket omitted.]

The evidence was sufficient to prove beyond a reasonable doubt that defendant placed his penis in a dog's anus. In relevant part, MCL 750.158 prohibits the common-law crime of bestiality.[1] *Haynes*, 281 Mich App at 30. For purposes of MCL 750.158, Michigan courts have recognized bestiality as including "any sexual connection between a human being and an animal." *Id.*; see also *People v Carrier*, 74 Mich App 161, 166; 254 NW2d 35 (1977). "To sustain a conviction under MCL 750.158, 'sexual penetration, however slight,' is required." *Haynes*, 281 Mich App at 30, quoting MCL 750.159,[2] and citing *Carrier*, 74 Mich App at 166.

Defendant's roommate, who had lived with defendant for three years, testified that while showering on the morning of March 15, 2014, she heard her dog howl, that she then left the shower running, and that she proceeded to walk toward the living room to investigate. In the living room, the roommate saw defendant with his pants down, on the floor on his hands and knees, kneeling over the dog, which was lying on the floor on its back, with its head away from defendant. Defendant's roommate testified to her belief that defendant "was . . . trying to penetrate . . . the dog." An animal control officer, to whom police officers brought the dog on the evening of March 15, 2014, testified that the dog had a swollen anus and looked very frightened. Police officers testified that they had submitted for DNA analysis defendant's underwear and an oral swab from the dog. Two forensic animal DNA experts testified that from

---

[1] In MCL 750.158, our Legislature provided as follows:

Any person who shall commit the abominable and detestable crime against nature either with mankind or with any animal shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years, or if such person was at the time of the said offense a sexually delinquent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life.

[2] MCL 750.159 provides that "[i]n any prosecution for sodomy, it shall not be necessary to prove emission, and any sexual penetration, however slight, shall be deemed sufficient to complete the crime specified in the next preceding section."

the inside of defendant's underwear, they developed a DNA profile of a canine, which matched the DNA profile of the dog. The roommate indicated that the dog would not generally have access to defendant's clothing, which defendant routinely placed in a basement laundry hamper.

The evidence gave rise to a reasonable inference that defendant's penis penetrated the dog's anus. Defendant's roommate did not see defendant's penis. But moments after hearing the dog howl, she saw the dog lying on its back with its head away from defendant, who had his pants partially down, and defendant was on his hands and knees above the dog. Later that night, the dog still had a swollen anus. And two forensic animal DNA experts matched the canine profile from the interior of defendant's underwear to the profile from the dog. Viewing the circumstantial evidence and reasonable inferences arising from the evidence in a light most favorable to the prosecution, deferring to the trial court's credibility and evidentiary-weight assessments, and resolving all conflicts in the evidence in favor of the prosecution, we hold that the trial court did not err in finding beyond a reasonable doubt that defendant had committed the offense of bestiality under MCL 750.158.

With respect to the animal cruelty conviction, the prosecutor charged defendant with "negligently allow[ing] an animal to suffer unnecessary neglect, torture, or pain." The prohibition of this conduct appears in MCL 750.50(2)(f), which criminalizes "[n]egligently allow[ing] any animal . . . to suffer unnecessary neglect, torture, or pain."[3] In MCL 750.50, our Legislature penalized to varying degrees a broad range of conduct toward animals. In MCL 750.50(1)(h), the Legislature defined "neglect" as failing "to sufficiently and properly care for an animal to the extent that the animal's health is jeopardized." Because MCL 750.50 does not specifically define "torture" or "pain," we would generally be permitted to consider dictionary definitions of these terms to aid in our construction. However, the term "pain" is self-explanatory, and we see no need to contemplate or reach the "torture" provision.

We agree with the trial court's conclusion that the record proved beyond a reasonable doubt that defendant inflicted pain on the dog. Shortly before the roommate observed defendant partially naked on the floor above the dog, she heard the dog howl. The animal control officer testified that later that evening, she noticed swelling around the dog's anus. We detect no error in the trial court's finding that the howling by the dog and the anal swelling suffered by the dog proved beyond a reasonable doubt that defendant inflicted pain on the dog.

Finally, defendant contests the validity of his sentence, arguing that because animal cruelty constitutes a misdemeanor, the trial court could impose only a probationary term of two

---

[3] In his appellate brief, defendant fails to address that the prosecutor charged him with violating MCL 750.50(2)(f), or the trial court's analysis finding that he violated subsection (2)(f). Defendant's brief instead addresses a different subsection, MCL 750.50(2)(b), which prohibits a person from "[c]ruelly driv[ing], work[ing], or beat[ing] an animal." When an appellant fails to dispute the basis of the trial court's ruling, we need not even consider granting the relief being requested. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Regardless, sufficient evidence supports defendant's conviction under subsection (2)(f).

years. Therefore, defendant argues, if this Court sets aside his felony bestiality conviction, remand for resentencing on the animal cruelty count is warranted. We have affirmed the bestiality conviction. Accordingly, defendant's argument fails, but we shall briefly examine the sentence. Bestiality is a felony, MCL 750.158, and pursuant to the plain language of MCL 771.2(1), "if the defendant is convicted of a felony, the probation period shall not exceed 5 years." The trial court also convicted defendant of misdemeanor animal cruelty, MCL 750.50(4)(a), and under the plain language of MCL 771.2(1), "if the defendant is convicted for an offense that is not a felony, the probation period shall not exceed 2 years."

The order of conviction and sentence and the order of probation identify the two statutes underlying defendant's convictions, but refer to a single, three-year term of probation, which is a lawful term of probation given defendant's felony bestiality conviction. The record does not establish that the trial court imposed a separate three-year term of probation for defendant's misdemeanor conviction. Resentencing is thus unwarranted.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell